SELECT SIRES, INC., APPELLEE AND CROSS-APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

(No. 78-1447—Decided June 6, 1979.)

*Messrs. Crabbe, Brown, Jones, Potts & Schmidt, Mr. E. Joel Wesp* and *Mr. Keith H. Jung,* for appellee and cross-appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Larry J. Baisden,* for appellant and cross-appellee.

*Per Curiam.* The Tax Commissioner maintains that the items assessed are "used in business," as that phrase is defined by R. C. 5701.08(A), and that these items do not fall within the agricultural exemption provided for in division (B) of that statute. R. C. 5701.08 provides that:

"As used in Title LVII of the Revised Code:

"(A) Personal property is 'used' within the meaning of 'used in business' when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand as material, parts, products, or merchandise. Machinery and equipment classifiable upon completion as personal property while under construction or installation to become part of a new or existing plant or other facility is not considered to be 'used' by the owner of such plant or other facility within the meaning of 'used in business' until such machinery and equipment is installed

and in operation or capable of operation in the business for which acquired. * * *

"(B) *'Business' includes all enterprises, except agriculture* conducted for gain, profit, or income and extends to personal service occupations." (Emphasis added.)

"Agriculture" is not 'defined in the Revised Code; therefore, the board bottomed its decision in this matter on this court's decision in *Benken* v. *Porterfield* (1969), 18 Ohio St. 2d 133, in which this court took the board to task for narrowly construing the "agriculture" exemption. This court, at pages 136-137, stated as follows:

"In *B. F. Goodrich Co.* v. *Peck,* 161 Ohio St. 202, the court distinguished the *Cleveland-Cliffs* case. The third paragraph of the syllabus in the *Goodrich Co. case* reads, in part:

" 'It is a general rule that, if there is any ambiguity in a statute defining the subjects of taxation, such ambiguity must be resolved in favor of the taxpayer * * * .'

"Although the law of these cases co-exists rather uncomfortably we see no utility in relying upon either. The word 'agriculture' is neither ambiguous, nor is the General Assembly's use of that word difficult to construe.

"The main thrust of the board's definition of 'agriculture' as set forth in its decision in the *Yoder Bros. case,* *supra,* and relied upon in its decision in this case, is that general farming is a requisite in order to come within the legislative intent of the statute. That definition appears to require planting, care and harvesting of crops in large quantities in large fields.

"In enacting Section 5711.22, Revised Code, the General Assembly did not suggest that agriculture is synonymous with general farming which, of necessity, must be conducted in large fields, outdoors and without artificial means.

"Webster's Third New International Dictionary defines 'agriculture' as the 'science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their

disposal.' We believe that this definition embodies the ordinary meaning of agriculture.

"Appellants' business, in our opinion, is agriculture.

"The limits established by the board's definition in the *Yoder Bros. case, supra*, are unnecessarily restrictive. The small size of a field does not foreclose use of that field for growing crops. Appellants' expert witness, Dr. Roy Kottman, stated in the record that virtually all Ohio producers employ some part of artificial aid in growing crops and there is no evidence in the record to the contrary. Adding materials to the soil is not a basis for distinction, since artificial aids are widely used in crop production."

The board in the instant cause made the following factual determination:

"The appellant [taxpayer] is clearly engaged in the development of technology to further one facet of agriculture—the breeding of dairy cattle to achieve optimum milk production. The appellant collects, treats, and preserves bovine sperm from proven livestock for use in the artificial insemination of cattle distributed throughout a large geographical area."

The General Assembly has not seen fit to alter this court's statements in *Benken* or to restrict the liberal interpretation given to the agricultural exemption in that cause. Moreover, this court does not sit in judgment of the board's decision as a trier of fact *de novo*, but only to determine the reasonableness and lawfulness of such decisions.

Under the applicable law in this cause, the decision of the board is neither unreasonable nor unlawful and is hereby affirmed.

*Decision affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, MAHONEY, SWEENEY, LOCHER and HOLMES, JJ., concur.

MAHONEY, J., of the Ninth Appellate District, sitting for P. BROWN, J.